IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Case No. 12-cv-1280 |
| | ) | |
| MATTHEW DOUGHERTY and | ) | |
| JOHN DOES 1, 3, 4, 5, 6, 8 and 9 | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S COMBINED MOTION TO DISMISS OR ALTERNATIVELY TO SEVER THE DEFENDANT**

NOW COMES Defendant, MATTHEW D. DOUGHERTY, as an Attorney admitted to the bar of this Court and as a *Pro Se* Litigant on behalf of himself, and in support of his Combined Motion to Dismiss Or Alternatively Sever Pursuant to Federal Rule of Civ. Procedure 45, states as follows:

**I.  FACTUAL BACKGROUND**

1. Plaintiff, Malibu Media, LLC, alleges in its Amended Complaint that Defendant, Matthew Dougherty, as well as other Defendants named as John Does 1, 3, 4, 5, 6, 8 and 9, downloaded the motion picture "Young & Hot," United States Copyright Registration Number PA0001794969, in violation of Plaintiff's copyright for the motion picture, referred to as the "Work" in the Complaint.

2. Defendant did not download the Work as alleged in the Amended Complaint. Defendant never authorized another person or entity to use his computer, router or modem to download the

Work. Defendant never benefited from, nor authorized, either explicitly or implicitly, any person or entity to use his computer, router or modem to download the Work.

3. Upon information and belief, Plaintiff, Malibu Media, LLC, is a shell corporation controlled and operated by attorneys and "settlement representatives" created solely and expressly for the purpose of purchasing copyrights to pornographic films in order to initiate lawsuits against internet users to pressure Internet Service Provider customers to settle each of the hundreds of cases it has filed, with dozens of John Doe defendants in each case, with no intention of actually proceeding with litigation.

4. Upon information and belief, Plaintiff obtains the identities of Defendants through filing a Federal R. of Civ. P. 26(f) Motion seeking pre-suit discovery in order to Subpoena Internet Service Providers ("ISP") to obtain the name, telephone number, mailing address, and other information of Defendants from ISPs, such as Comcast Media Corporation in this case, in order to contact those Defendants to wrest a settlement.

5. Consistent with the allegations in Paragraphs 3 and 4 *supra*, in response to Plaintiff's Rule 26(f) Motion for pre-trial discovery in a matter almost identical to the one at bar that was brought six months ago in this United States Federal District Court for the Central District, before the Honorable Harold A. Baker of the Champaign Division, Judge Baker held in an Order, responding to a Rule 26(f) Motion for pre-trial discovery, that:

> This case differs slightly from a case filed in this Court in 2011. *VPR Internationale, Inc. v. Does 1-1017*, Case No. 11-2068 (C.D.Ill.), [and] was a purported "reverse class action" case. Some of the 1,017 Doe Defendants were believed to reside in this district. The plaintiff filed a motion for expedited discovery to obtain subscribers' personal information, which the court denied. Malibu Media has not [yet] invoked Fed. R. Civ. P. 23. It has ascertained through a company based in Germany that the IP addresses of the fourteen Does [in this case] are in cities within the Central District of Illinois. [footnote 2: Seven of the fourteen Does are in the Urbana Division; five are in the Peoria Division; one in the Rock Island Division; and one in the Springfield Division. Coincidentally, four

cases involving other "motion pictures" were filed in either Springfield or Peoria on the same day by the same attorney [Attorney Paul J. Nicoletti, counsel in the current matter]. Although the title "Like the First Time" is not revealing, the "motion picture" titles in other cases are more suggestive. *See, e.g. Malibu Media, LLC v. John Does 1-13*, 12-3160 (C.D.Ill.). d/e 1-2.] . . .

*The fact is that the subscribers are not necessarily the copyright infringers.* Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. Agents raided the home and seized the desktop computer, iPhones, and iPads of the homeowner and his wife. The agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple subscribers' Wi-Fi connections (including a secure connection from the State University of New York). *See* Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/.

The ISP subscriber need not be an individual. It might be a library, an airport terminal, or the local Starbucks. *Where the subscriber is an individual, the correlation is far from perfect, as discussed in the MSNBC article. The infringer might be someone in the subscriber's household, a visitor with a laptop or iPhone, a neighbor, or someone parked on the street at any given moment.*

In VPR, the court noted that *in cases involving adult content, expedited discovery could be used to wrest quick settlements from people who have done nothing wrong. The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to question whether the plaintiff had competent evidence to prove its case.* [In] *VPR*, d/e 15. In *Pacific Century Int'l, Ltd. v. Does 1-129*, 5:11-cv-03681 (N.D. Cal.), **the plaintiffs obtained leave to expedite discovery and subpoenaed the ISPs. The law firm then demanded settlements from subscribers of as much as $3,400.00. Payment could be made by check, money order, bank draft, or credit card, using a convenient form sent with the settlement demand.** [footnote 3 omitted] Eight months after the lawsuit was filed, *the plaintiff filed a notice of voluntary dismissal without ever naming a single Doe defendant.* … [emphasis added]. Order of Hon. Harold A. Baker, June 29, 2012; **Exhibit A**.

Attorney Paul J. Nicoletti, the same Plaintiff's counsel in the current matter, thereafter unsuccessfully appealed Honorable Harold A. Baker's Order to the United States 7th Circuit Court of Appeals.

6. As further proof of Plaintiff's perfidious business enterprise, a basic internet search of "Malibu Media LLC" reveals almost nothing but information on these cookie-cutter lawsuits

against ISP subscriber-Defendants for copyright infringement described by Judge Baker. *See* **Exhibit B**.

7. Additionally, there appears to be no corporate website, no advertising or marketing materials, and, perhaps most important, no legitimate means for an individual to actually purchase the films from Plaintiff that Malibu Media, LLC claims to be trying to protect from infringement.

8. Further, to the extent that Plaintiff holds any copyrights, upon information and belief, Plaintiff purchased the rights to the pornographic films only after it discovered that the films had been the subject of infringing behavior through BitTorrent websites.

9. Indeed, according to its Complaint, Plaintiff obtained its copyright to the Work on or about June 8, 2012, and then, for the purposes of this lawsuit, "identified" most infringers for the Work immediately thereafter on June 7, 2012 ("John Doe #2), June 10, 2012 (John Doe #5), June 14, 2012 (John Doe #1) and June 16, 2012 (this Defendant previously identified as John Doe #7), and then quickly brought this suit on August 11, 2012 as well as dozens of other corresponding suits involving the same and other similar titles of Works within the same time frame.

10. Plaintiff continues to bring such suits, and has filed them as recently as December 6, 2012 (12-cv-09719, 12-cv-09724 and 12-cv-09727) and December 4, 2012 (12-cv-09655 and 12-cv-09656) in the Federal District Court for the Northern District of Illinois.

11. While Plaintiff asserts that this action, and by extension the dozens of other nearly identical cases filed by Plaintiff in Illinois and many other States, including, but not limited to, California, Colorado, Michigan, Pennsylvania and Indiana, are being filed in order to protect the copyrights it owns in pornographic films, upon information and belief, this case and all the others like it are part of a series of hundreds of lawsuits against John Doe defendants initiated

over the past several years by this Plaintiff and other pornography companies as an abuse of process of the Courts in order to effectuate a business model focused on coercing settlements from individuals who the Plaintiff has no interest in determining whether actual liability exists.

12. Finally, upon information and belief, to further demonstrate that this is a substantial abuse of process and a waste of judicial time and resources, to date, not a single one of the hundreds of cases filed by Plaintiff against thousands of individual John Doe defendants[1] has ever been brought to trial or engaged in any meaningful discovery.

## II. TECHNICAL FACTUAL BACKGROUND

13. Defendant hereby incorporates Paragraphs 1 through 12 of this pleading as Paragraph 13.

14. An ISP assigns an identifying number, called an Internet Protocol ("IP") address, to each ISP subscriber, similar to defendants, and the ISP connects the user to the Internet. *United States v. Heckenkamp*, 482 F.3d 1142, 1144 n.1 (9th Cir. 2007). In many cases, ISPs assign subscribers a dynamic IP address that changes over time. *United States v. Kearney*, 672 F.3d 81, 89 (1st Cir.2012). An IP address serves to route traffic efficiently through the network, but an IP address does not identify the computer being used or its user.

15. Plaintiff has identified only the IP addresses of routers or wireless access points for accounts it alleges were used to download the Work, and has not necessarily identified the actual alleged individual infringing party or parties. "IP subscribers are not necessarily copyright infringers." VPR Internationale v. Does 1-1017, No. 11-cv-02068-HAB-DGB, 2011 U.S. Dist. LEXIS 64656, at 3 (N.D. Ill. Apr. 29, 2011); *See also*, Order of Hon. Harold A. Baker, June 29, 2012 attached hereto as **Exhibit A**.

---

[1] Upon information and belief, as of November 10, 2012, Malibu Media, LLC had filed 365 lawsuits against approximately 6,000 individuals.

16. "[Even w]here an IP address might actually identify an individual subscriber and address the correlation is still far from perfect . . . The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *Id.*

17. Forensics firms often misidentify innocent subscribers as infringers for other reasons, including that IP addresses[2] and timestamps that do not reliably identify the correct party and that ISP subscribers whose providers use dynamic IP addressing, such as Defendant's, share its IP address with several other subscribers.

18. Anyone with wireless capability can use a subscriber's wifi network to access the Internet and create the impression that it is the ISP subscriber/account holder who is engaged in potentially wrongful acts.

### III. MOTION TO DISMISS

19. Defendant hereby incorporates Paragraphs 1 through 18 as Paragraph 19 of this pleading.

20. Plaintiff lacks standing to bring the Amended Complaint (as well as the original Complaint) and does not legally own the right to sue for infringement of the Work.

21. The Work in question was originally created by "Brigham Field," proprietor of the website X-Art.com who owned the copyright to the Work prior to assigning the copyright to Malibu Media, LLC.

22. Plaintiff filed an action very similar to this one on June 14, 2012 in the Federal Court for the Eastern District of Michigan (*Malibu Media, LLC v. Does 1-13,* 2:12-cv-12586-PJD-MJH) against 13 John Doe Defendants alleging statutory Copyright Infringement claims, and the

---

[2] "IP addresses specify the locations of the source and destination nodes in the topology of the routing system." Wikipedia, *"IP Address"*, http://en.wikipedia.org/wiki/IP_address (as of December 23, 2012).

infringement claim in this case appears to differ in no way from the Works in the Michigan case. In its Complaint, Malibu Media, LLC stated that it validly owned copyrights for works similar to the Work at issue in this case and had full standing to sue for infringement of those Works.

23. The Copyright Act provides that only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement…" 17 U.S.C. § 501(b) and Section 106 of the Copyright Act states:

> …the <u>owner</u> of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; …[emphasis added]

24. Numerous defendants in said case filed a Motion to Quash the Rule 26(f) third party subpoena of the Plaintiff to ascertain their personal information from their ISPs. In the course of this litigation, the defendants argued Plaintiff lacked standing to bring the action because it did not have the right to sue on the copyrights. The motions remain pending for final disposition before the Michigan District Court.

25. Shortly thereafter, Malibu Media, LLC tried to correct the deficiency by filing new registrations with the copyright office on September 13, 2012, through its counsel. In the new registrations, Plaintiff stated to the copyright office:

>This particular work was created by Brigham Field and was transferred through an assignment of copyright to Malibu Media, LLC after the company was formed and was not originally created as a work for hire.
>
>Brigham Field's current arrangement with Malibu Media, LLC is that the movies he creates are a work for hire and owned by Malibu Media, LLC. This agreement is in writing. When he instructed his agent to register this work, he mistakenly told his agent to register this work as a work for hire authored by Malibu Media, LLC. **Exhibit C**.

26. In the Michigan case, when asked to produce the "assignments in writing," Plaintiff produced an undated written list of assignment found in **Exhibit D**. Despite this attempt to reconcile the situation, there was a fundamental defect with the Assignments: Brigham Field only assigned the rights, title and interest in the works to Plaintiff.

27. The Assignments fail to expressly include any of the exclusive rights enumerated under Section 106, and do not include any accrued rights to sue for past infringements. **Exhibit C.** This renders Malibu's standing in this case legally null.

28. Thus, as a result of the Assignment, although Plaintiff might own the "registrations," this status is insufficient to confer standing to bring the copyright infringement claim at bar. A plaintiff must also own exclusive rights in the work. *Sybersound Records, Incorporated v. UAV Corporation*, 517 F.3d 1137, 1146 (9th Cir. 2008). The Assignment ostensibly conveying ownership from Mr. Field to Plaintiff does not mention any exclusive rights in the works as required by law.

29. In fact, the Assignment does not contain the legally necessary and operative word "exclusive." **Exhibit C**. As a result, the Assignments are simply licenses, and thus insufficient to confer standing.

30. In *Sybersound Records, Incorporated v. UAV Corporation*, TVT Records attempted to provide *Sybersound* with an Assignment with the intent that Sybersound would have standing to

sue for infringement. This attempt to confer standing failed. 517 F.3d at 1146. Like Brigham Field, TVT similarly provided a blanket Assignment to its copyrighted interests in the use of its works to *Sybersound*, and *Sybersound* then attempted to sue infringers. *Id*. As it turned out, TVT did not have sole ownership of these copyright; as a result TVT's assignment was nonexclusive, and Sybersound acquired only a license like in the instant case, "which [gave] *Sybersound* no standing to sue for copyright infringement." *Id*.

31.  In this case, the Assignment does not confer exclusive rights from Field to Malibu Media, LLC. The Assignment makes no mention of what rights Field owned in the copyrights, and rather than rights under Section 106, Field essentially Assigned an ambiguous, muddled bundle of non-exclusive rights.

32.  Plaintiff merely owns whatever unidentified rights Mr. Field had in the copyrights, and under the express language of the Assignment, Malibu Media, LLC does not have the necessary rights to bring the claim in question. The right to sue for copyright infringement under Section 501 requires ownership of exclusive rights. *Silvers*, 402 F.3d at 889-890, *citing Eden Toys*, 697 F.3d at 32 and *ABKCO Music*, 944 F.2d at 980.

33.  Plaintiff has provided no proof, whatsoever, that it (or Field) possesses the exclusive rights under Section 106 of the Copyright Act to bring this suit. It is very well established case law that a plaintiff must have exclusive rights in a copyright to sustain an action for copyright infringement. *Hyperquest, Inc. v. N'Site Solutions, Inc.,* 632 F.3d 377, 383 (7th Cir. 2011); *Sybersound*, 517 F. 3d at 1146; *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Silvers v. Sony Pictures Entertainment,* 402 F.3d 881 (9th Cir. 2005); *Righthaven LLC v. Hoehn,* 792 F. Supp. 2d 1138; *Righthaven LLC v. Democratic Underground LLC et al.,* 791 F. Supp. 2d 968 (D. Nev. 2011

34. The rights Malibu Media, LLC actually received from Mr. Field are determined by the Agreement's express substantive terms. *Hyperquest*, 632 F.3d at 383. If the agreement lacks "clearly delineated exclusivity over at least one strand in the bundle of rights" contained in Section 106, the putative copyright owner lacks the right to bring suit. *Hyperquest*, 632 F.3d at 384-85.

35. Even if all exclusive rights were granted, the right to sue for past infringement, such as in this case, does not transfer unless the instrument of Assignment expressly states it is the case. The Assignment's vague language in this case is quite similar to the same vague Assignment received by Righthaven LLC, which used similarly equivocal language concerning the rights it acquired in the works underlying its infringement lawsuits.

36. Upon discovering a secret agreement between Righthaven LLC and the works' original creators which specifically deprived Righthaven LLC of exclusive rights in the works, U.S. District Judge Hunt ultimately characterized Righthaven LLC's reliance on this quitclaim language as "disingenuous," writing that: Righthaven led the district judges of this district to believe that it was the true owner of the copyright in the relevant news articles. Righthaven did not disclose the true nature of the transaction[.] As the [the original creator] *retained* the exclusive rights, [and] never actually transferring them to Righthaven. *Democratic Underground*, 791 F. Supp. 2d at 976 *LLC et al.,* 791 F. Supp. 2d 968 (D. Nev. 2011). Righthaven's claims failed.

37. The right to sue for copyright infringement under Section 501 requires ownership of exclusive rights. *Silvers*, 402 F.3d at 889-890, *citing Eden Toys*, 697 F.3d at 32 and *ABKCOMusic*, 944 F.2d at 980. The rights Malibu Media obtained from Field are determined by the Agreement's substantive terms. *Hyperquest*, 632 F.3d at 383. When the Assignment lacks

"clearly delineated exclusivity over at least one strand in the bundle of rights" contained in Section 106, the putative copyright owner lacks the right to bring suit. *Hyperquest*, 632 F.3d at 384-85.

38.  As a result of these facts, Malibu Media, LLC has no standing to bring suit in this matter, and the case should be dismissed with prejudice.

WHEREFORE, for the foregoing reasons, Defendant, MATTHEW DOUGHERTY, respectfully requests that the Court dismiss, with prejudice, Plaintiff's Amended Complaint as well as grant any and all other remedy or relief that this Court may deem just and proper.

## IV. MOTION TO SEVER DEFENDANT

39.  Defendant hereby incorporates Paragraphs 1 through 38 as Paragraph 39 of this pleading.

40.  Pursuant to Fed. R. Civil P. 20, parties may be joined in a single lawsuit where the claims against them arise from a single transaction or a series of closely related transactions. Though an action may not be dismissed for misjoinder, the Court may drop a party at any time. Fed. R. Civ. P. 21.

41.  Specifically, the Court may consider various factors to determine whether joinder "comport[s] with the fundamental principles of fairness," including the possibility of prejudice to the Defendant and the motives of Plaintiff in seeking joinder.

42.  Even assuming that Defendant was an actual infringer, entered the same swarm, and downloaded the same seed file as John Doe #1, Plaintiff has failed to show that Defendant exchanged any piece of the seed file with any other John Doe Defendant in this case. See *Boy Racer, Inc. v. Does 1-60,* 11-cv-01738-SI, 2011, 2011 U.S. Dist. LEXIS 92994, at 4 (N.D. Cal., Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts showing any particular defendant illegally shared plaintiff's work with any other particular defendant.")

43. In its Complaint, the Plaintiff alleges that "Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because…(a) each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants, and (b) the infringement complained of herein by each of the Defendants as part of a series of transactions, involving the exact same torrent file containing Plaintiff's copyrighted Works [sic], and was accomplished by the Defendants acting in concert with each other, and (c) there are common questions of law and fact; indeed, the claims against each of the Defendants are identical and each of the Defendants used the BitTorrent protocol to infringe Plaintiff's copyrighted Works [sic]."

44. Despite this, Exhibit A to Plaintiff's original Complaint, which consists of a small chart listing the John Doe Defendants and including, among other things, their "Doe #", IP address and "hit date", reveals that none of the "hits" occurred on the same day.

45. According to the Exhibit, the earliest "hit" occurred on June 7, 2012, and the last "hit" occurred on July 27, 2012. Defendant's alleged "hit" was on June 16, 2012. *Complaint, Exhibit A.*

46. Absent evidence (none of which exists) that these John Does actually acted in concert to illegally download the Work, joinder is inappropriate. *See e.g.* Hard Drive Productions, Inc. v. Does 1-888, 11-cv-01566-JCS, 2011 U.S. Dist. LEXIS, at 7-14 (N.D. Cal. Aug. 23, 2011); *AF Holdings LLC v. Does 1-97*, 11-cv-03067-CW, 2011 U.S. Dist. LEXIS 78636, at 4 (N.D. Cal. July 20, 2011).

47. Numerous courts involving Malibu Media, LLC as Plaintiff have recently held that joinder of groups of John Doe defendants is improper under Fed. R. Civ. P. 20 and Ordered that pursuant to Fed. R. Civ. P. 21, all John Does other than John Doe #1 must be dropped from the

case.³ *Malibu Media, LLC v. John Does 1-11 (7:12-cv-3810); Malibu Media, LLC v. John Does 1-16 (12-cv-3818); Malibu Media, LLC v. John Does 1-21 (12-cv-3821) (S. Dist. New York); Malibu Media, LLC v. John Does 1-32*, 2:12-cv-2480-JAM-DAD; *Malibu Media, LLC v. John Does 1-13*, 2:12-cv-1260-JAM-DAD.

48. Again, Defendant is alleged to have been part of a "swarm" that occurred over the course of two months, but Plaintiff has failed to allege, and cannot prove, that Defendant interacted with or shared any portion of any file with any of the remaining John Doe defendants in this matter. Plaintiff cannot show that Defendant acted in concert with anyone, and certainly cannot show that Defendant is, in fact, the alleged infringer against whom they seek relief.

49. Simply put, in this matter, Plaintiff attached to its Complaint a chart which clearly indicates that the IP address associated with Defendant was not tracked sharing anything with any other defendant in this matter, and, in fact, there is no overlap of any kind in the dates and times alleged by Plaintiff. As a result, Defendant should be severed and dismissed from this lawsuit.

WHEREFORE, for the foregoing reasons, Defendant, MATTHEW DOUGHERTY, respectfully requests that the Court sever and dismiss him as well as grant any and all other remedy or relief that this Court may deem just and proper.

        MATTHEW D. DOUGHERTY, Defendant

    By:_____s/*Matthew Dougherty*_____
        Matthew D. Dougherty
        Attorney and *Pro Se* Litigant

---

³     Defendant was named as John Doe #7

Matthew D. Dougherty (Illinois Bar No. 6296273
Attorney and *Pro Se* Litigant
P.O. Box 251
Chatham, Illinois 62629-0251
Telephone: (217) 361-8000
E-mail: mattddougherty@gmail.com