E-FILED
Friday, 11 January, 2013  05:43:55 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. <u>1:12-cv-01280-JES-JAG</u> |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW DOUGHERTY and JOHN | ) | |
| DOES 1, 3, 4, 5, 6, 8, and 9, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S COMBINED MOTION TO DISMISS OR ALTERNATIVELY TO SEVER THE DEFENDANT [CM/ECF 25]

### I.    INTRODUCTION

Defendant's arguments are baseless and unsupported by the law and facts.  Accordingly, the Court should deny Defendant's motion.

First, as explained more fully below, Plaintiff Malibu Media, LLC, like any other small business, is comprised of enterprising and dedicated individuals who desire to promote and protect the business they have built from the ground up.  Plaintiff's copyright enforcement efforts are in furtherance of that goal and not for any of the improper purposes Defendant suggests.  Next, Defendant has copied an argument regarding Malibu Media's right to sue for infringement based upon a specific copyright assignment issue.  This argument, however, only applied to a very small number of Malibu Media's movies, none of which are the subject of this suit.  Further, just this past week Defendant's exact argument was rejected by another district court.  Finally, Defendant's joinder argument requesting this Court to sever the Defendants would not benefit Defendant and this Court has previously denied similar motions to sever.  "Based on the allegations . . . the copy that each Defendant downloaded ultimately came from a

1

single source.  Given the policy in favor of joinder, this is sufficient . . . to deny severance."
*Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 (C.D. Ill. 2012).

For these reasons, as more fully explained below, the Court should deny Defendant's motion to dismiss.

## II.   FACTS

### A.   The Fields Created Plaintiff's Business

Colette Pelissier Field, with her husband Brigham Field, began their business from scratch.  Ms. Field was a real estate agent and Mr. Field was a photographer.  When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together.  The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples.  The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand.  Their goal was to create erotica that is artistic and beautiful.  The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality.  They created an Internet website called X-Art.com.

### B.   Malibu Media Owns Its Copyrights

Like many small businesses, at first, the Fields operated as an unincorporated partnership. In due course, however, the Fields formed Malibu Media, their media production and distribution company, and contributed Mr. Field's Copyrights to it.

Mr. Field authored and produced the videos while the Fields were an unincorporated partnership.  Upon founding the company on February 8, 2011, the Fields discussed with each other and agreed that the copyrights would be transferred to Malibu Media.  The Fields intended

2

for the transfer of rights to cover every single right associated with a copyright; including the exclusive right to sue for past, present, and future infringement.  They also intended for the unincorporated entity to cease to exist.

All copyrighted works created by Mr. Field were transferred through a written assignment of copyright to Malibu Media.  Mr. Field's current arrangement with the company is that the movies he creates are works made for hire and owned by the company.  Unfortunately, the company's attorney was mistakenly told to register some works as "works made for hire" and authored by Malibu Media despite these works being authored by Mr. Field prior to formation of the LLC and being subsequently assigned to the company.  The Fields instructed their attorneys to correct the registration and counsel for Malibu Media filed a Form CA, which is used for "C"orrecting and "A"mplifying a registration.  With that Form, they also filed the assignment. Since that time, the assignment has been supplemented to clarify that the plenary rights granted to Malibu Media, LLC via the use of the words "all rights, title and interests, in and to the copyrights" was intended to include the right to sue for past, present, and future infringement, which the Fields had always assumed was impliedly included from the start, and to make clear that the Effective Date is February 8, 2011.

No other person or entity, other than Malibu Media, has or can claim to have an ownership interest in the copyrights.  Indeed, the Fields are currently and always have been the sole owners of Malibu Media, and its predecessor, their partnership.

C.  **Malibu Media Wants the Infringement to Stop**

Malibu Media's customers can pay it a monthly recurring subscription fee of $19.95, or an annual subscription fee of $99.95 to access its entire library of HD Video content.  Internet subscription sales are and have always been by *far* Malibu Media's primary source of revenue.

As Malibu Media's business has grown its production value has also grown.  It spends millions of dollars a year to produce its content and run its website.  Currently, it has tens of thousands of members, but it is finding it hard to grow and maintain the memberships because so many people are finding its films for free.  The Fields have worked hard and invested millions of dollars in their business in order to produce the best quality product.

For the first 3 years (when X-Art.com was not as popular) the Fields did not have as many issues with piracy.  Now, that Malibu Media's videos are highly desirable, more people steal the videos than pay for a subscription.  Malibu Media is even getting many complaints from its members (asking why they should pay when Plaintiff's videos are available for free on the torrents).  The Fields firmly believe that they must protect Malibu Media's copyrights in order for it to survive and grow.  The Fields have gone over their options many times and concluded that the only way they can protect their business and their ability to sell subscriptions is to sue infringers.  The Fields do not want to cause financial hardship to anyone: however, they do want to deter infringement and be compensated for the intentional theft of Malibu Media's videos.

Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millennium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites.  Despite sending thousands of DMCA notices per week, the infringement continues.  And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free.  Malibu Media has *never* authorized anyone to put its works on a torrent website.

Malibu Media does not seek to use the Court system to profit from the infringement like some have suggested.  As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business.   Malibu Media wants the

infringement to stop.  Accordingly, the purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of its copyrights.

### D.   Defendant Stole Plaintiff's Movie

"To state a claim for copyright infringement, a plaintiff must allege: '(1) ownership of a valid copyright[;] and (2) copying of constituent elements of the work that are original.'"  *White v. Marshall*, 693 F. Supp. 2d 873, 883 (E.D. Wis. 2009) (quoting *Feist Publications, Inc. v. Rural Telephone Service, Inc.,* 499 U.S. 340, 361 (1991)).  Plaintiff pled a prima facie case of infringement.  "Plaintiff is the owner of United States Copyright Registration Number PA0001794969 (the "Registration") for the motion picture entitled "Young & Hot" (the "Work")."  *Complaint* at ¶ 10.  "A copy of an internet screen shot from the U.S. Copyright Office's website evidencing, among other things, Plaintiff's ownership of the Registration and the registration date is attached as Exhibit B."  *Id.* at ¶ 12.  "Defendant installed a BitTorrent Client onto his or her computer."  *Id.* at ¶ 15.  "Defendant went to a torrent site to upload and download Plaintiff's copyrighted Work."  *Id.* at ¶ 27.  "Plaintiff retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent Protocol and the internet to reproduce, distribute, display, or perform Plaintiff's copyrighted works."  *Id.* at ¶ 35.  "IPP used forensic software . . . and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions."  *Id.* at ¶ 36.  "IPP extracted the resulting data . . . reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith . . ."  *Id.* at ¶ 37.  "The IP addresses, Unique Hash Number and hit dates . . . accurately reflect . . . and show: (A) each Defendant had copied a piece of Plaintiff's copyrighted Work identified by the Unique Hash Number; and (B) Therefore, each Defendant

was part of the same series of transactions." *Id.* at ¶ 38. "By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered Work that are original." *Id.* at ¶ 46. "Plaintiff did not authorize, permit or consent to Defendants' copying of its work." *Id.* at ¶ 47. "As a result of the foregoing, each Defendant violated Plaintiff's exclusive [copy]right[s]." *Id.* at ¶ 48.

## III.   LEGAL STANDARD

"Article III . . . gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas,* 495 U.S. 149, 154-155 (1990).  Under Supreme Court precedent, to establish standing, a plaintiff need only establish: (1) an injury, (2) which was caused by the Defendant, (3) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

In evaluating a motion to dismiss for alleged lack of standing, courts "do not review the facts to see if [plaintiffs] have proven their allegations."  *National Wildlife Federation v. Agricultural Stabilization and Conservation Service*, 901 F.2d 673, 677 (8th Cir. 1990).  Instead, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id., quoting Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).  "[U]nless [Plaintiff's] allegations are incapable of proof at trial, [the Court] must accept them as true." *Id., citing United States v. SCRAP*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2416-17 (1973).

6

IV.  **ARGUMENT**

A.  **Defendant's Copyright Assignment Argument is Misplaced**

The majority of Defendant's Motion to Dismiss is spent challenging Malibu Media's ownership over certain unspecified copyrighted works.  Specifically, Defendant wrongly asserts that Malibu Media lacks standing to bring the instant lawsuit because the assignment agreement by which Malibu came to own certain works was faulty, and that therefore, Malibu Media is not a proper copyright holder entitled to bring suit for infringement.  Defendant's argument has no application to the instant case.  Here, Plaintiff alleged that Defendant used the BitTorrent protocol to infringe a single work.  Exhibit "B" to Plaintiff's Amended Complaint makes clear that the Work was registered on June 8, 2012 and was created as a work made for hire for Malibu Media, LLC.  The Copyright Act provides that "[i]n the case of a work made for hire, the employer . . . for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise . . . owns all of the rights comprised in the copyright." *17 U.S.C. § 201(b)*.  Here there was no agreement to the contrary so Malibu Media, as the employer, is considered the author and owns all of the rights comprised in the copyright.  Accordingly, Defendant's argument that "Plaintiff has provided no proof, whatsoever, that it . . . possesses the exclusive rights under Section 106 of the Copyright Act to bring this suit" fails on its face.  There can be no question here as to whether or not Malibu Media owns the subject work and the copyright therein or whether or not they are entitled to sue infringers of the work.  Defendant's baseless and off-point argument fails as a matter of fact and law.

B.  **Even if Defendant's Argument Was Applicable, it Has Been Resoundingly Rejected**

Even though Defendant's copyright assignment argument has no application to the instant case, even if it did, Defendant's exact argument has been recently expressly rejected.  Just

7

last week the Honorable Judge Baylson in *Malibu Media v. John Does*, 2013 WL 30648, (E.D. PA. Jan. 3, 2013) issued an opinion denying nearly identical motions to dismiss for lack of standing.  Judge Baylson accurately and extensively examined the issue of Plaintiff's standing and stated:

> The Court concludes Plaintiff has the requisite standing to bring the claims in the Amended Complaints.  Even if Defendants themselves had standing to contest the validity of the Assignment – which it appears they do not, given the lack of disagreement regarding the Assignment among the original parties – the background context of Malibu's formation, the Affidavit of Colette Field, the text of the Written Assignment from September 13, 2013, and the text of the Clarification Agreement from December 5, 2012, all demonstrate that Brigham Field intended to transfer and did transfer complete and exclusive rights in his copyrighted works to Malibu when the company was formed on February 8, 2011. Malibu was the "exclusive" owner of the Brigham Field copyrights as of that time, and it has standing to sue for infringement of those works presently.

*Id.* at *16.  Again, the copyright at issue in this case was published and registered in June 2012, long after Plaintiff's company was formed.  The Work at issue in this case was not the subject of an assignment agreement but rather a work made for hire agreement.  Plaintiff's registration, attached to its Complaint, acts as prima facie evidence of copyright ownership.  Accordingly, Defendant's argument fails and this Court should not dismiss the Complaint.

## C.   Joinder is Proper

This Court has recently rejected Defendant's remaining argument regarding joinder.  *See Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 (C.D. Ill. 2012) ("At this point . . . severance is denied.")  Further, "[m]isjoinder of parties is not a ground for dismissing an action." *Fed. R. Civ. P. 21*.  Although Defendant is attempting to use his joinder argument to avoid facing Plaintiff's claims for copyright infringement, severance would provide no benefit to Defendant Dougherty.  If this Court were to sever the case, Plaintiff would re-file its claim against Defendant Dougherty, naming and serving him individually.  Severance would ultimately only

delay resolution of Plaintiff's claims, duplicate the time and effort required by the Court and the parties, and result in the filing of duplicitous lawsuits.   Thus, this Court should not sever Defendant.

Fed. R. Civ. P. 20 permits joinder when plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action."   Rule 20(a) not only permits joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability.   Plaintiff has done both here.

"'With the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency,' requiring greater use of the more liberal joinder procedures." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1094 (2d Cir. 1992) (*quoting 6A Wright, Miller & Kane § 1581*).   "Here, the nature of the technology compels the conclusion that defendants' alleged transactions were part of the same 'series of transactions or occurrences.'   Accordingly, we find that the Rule 20(a)(2) criteria for joinder are satisfied." *Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 (S.D.N.Y. 2012) (emphasis added).

### 1.   The Infringement Occurred Through a Series of Transactions

Under Fed. R. Civ. P. 20(a) "series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974.

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

### a.   <u>Here, Plaintiff Properly Pled a Series of Transactions</u>

Plaintiff alleges that its investigator, IPP Limited, was able to receive a piece of Plaintiff's copyrighted movie from each Defendant.  In order for Plaintiff's investigator to have received this piece, each alleged infringer must have had part of Plaintiff's movie on his or her computer and allowed others to download it.

There are four possible ways that each Defendant may have received the piece of the movie that was sent to IPP Limited.  First, the Defendant may have directly connected with the initial seeder and downloaded a piece of the file directly from the initial seeder's computer. Second, the Defendant may have directly connected to and received a piece of the movie from a seeder who downloaded the movie from the initial seeder or other infringers.   Third, the Defendant may have connected to or received a piece of the movie from other Defendants that received the movie from the initial seeder or other infringers.   Fourth, the Defendant may have connected to or received a piece of the movie from other infringers who downloaded from other Defendants, other infringers, other seeders, or the initial seeder.

"In other words . . . at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP."  *Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840, at \*5 (E.D. Mich. 2012).  See also *Raw Films v. John Does*

*1-15*, 2012 WL 1019067, at *4 (E.D. Pa. 2012) ("the claims against each Doe defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server.")  Each defendant participated in the same series of transactions.  These transactions are all reasonably related, not just because Defendants used BitTorrent, but also because Defendants utilized the computers of others to download the same file, and allowed others to access their computer to receive it.

> **b.** **The Supreme Court Allows Joinder When the Defendants Do Not Directly Interact With Each Other**

In *United States v. Mississippi*, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote.  Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact.  *Id.* at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color.  On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

*Id.* at 142.  Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the Defendants to have directly interacted with each other Defendant, or have shared a piece of the file with each and every Defendant when downloading the movie.  Defendant's argument that joinder is improper

because the infringement occurred from different locations using different IP addresses is therefore unavailing. The Defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers. The Defendants all acted under the same exact system. Just as it was not alleged in *United States v. Mississippi* that the registrars shared with each other their efforts to prevent African Americans from voting, it is not necessary for the Defendants to have shared the pieces of the movie with each other. It is sufficient that the Defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

### 2. The Time Period For Infringement

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time. Even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download. Accordingly, Doe 19's assertion that he/she was away from the computer at the time of the alleged infringement is non-dispositive.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

12

*Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840 (E.D. Mich. 2012) (emphasis added). Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

"While the period at issue may . . . appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time." *Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 (S.D.N.Y. 2012) (memorandum and order denying motion to sever and dismiss). "[T]he <u>law of joinder does not have as a precondition that there be temporal distance or temporal overlap</u>; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." *Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840 (E.D. Mich. 2012) (emphasis added).

### 3.    <u>There Are Common Issues of Fact and Law</u>

Rule 20(a)(2)(B) requires the plaintiff's claims against the putative defendants to contain a common question of law or fact. "The Plaintiff meets this requirement. In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." *Nu Image, Inc. v. Does 1-3, 932*, 2012 WL 1255189 (M.D. Fla. 2012). The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant." *Call of the Wild Movie v. Does 1-1,062*, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011). *See also Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383 (E.D. Pa. 2012); *Patrick Collins Inc., v. John Does 1-43*, 2:11-cv-04203-FSH-PS (D. NJ 2012).

### 4.    Joinder is Proper Because Plaintiff Properly Pled Defendants Were Jointly and Severally Liable

Joinder is proper when a plaintiff pleads joint and several liability.  *See e.g. Genetic Technologies Ltd. v. Agilent Technologies, Inc.*, 2012 WL 1060040 (D. Colo. 2012) ("It is uncontested that Plaintiff does not assert joint or several liability here, which would be a separate basis for joinder.")  Rule 20(a) provides for "any right to relief jointly, severally, or in the alternative."  In this case Plaintiff pled both joint and several liability.  "[C]oncert of action, *i.e.,* a right to relief jointly, is <u>not</u> a precondition of joinder. Plaintiff asserts a right to relief jointly against Defendants *and* severally.  Therefore, the first clause of Rule 20(a)(2)(A) is satisfied by the assertion of a right severally."  *Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840, at *8 (E.D. Mich. 2012).

By requiring Defendants to directly interact with each other, the Court would require the Defendants to be jointly liable with each other.   Because Rule 20 provides that a party may be joined if the claims against them are <u>either</u> jointly or severally liable, the requirement that defendants directly shared pieces of the movie with each other contradicts the language of Rule 20.

> A right to relief against defendants jointly requires concerted action by two or more parties. A right to relief severally against defendants means that each right to relief is separate and distinct from defendant to defendant and no interaction among the defendants is required. An 'alternative' right to relief may be asserted when plaintiff knows one of the defendants is liable, but does not know which one. *4 Moore's Federal Practice § 20.03*. <u>Plaintiff asserts a right to relief against Defendants jointly and a right to relief severally; however, a right to relief against the Defendants severally alone is sufficient to satisfy the first clause of Rule 20.</u>

*Id.* (Emphasis added).

**5.**   **Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendants**

Joinder of the Defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe Defendants. "[Defendant] . . . asks the Court to exercise its discretion to sever the case because joinder does not promote judicial economy . . . [But,] [j]oinder at the discovery phase would be more efficient than the same discovery in . . . separate cases . . . At this point . . . severance is denied." *Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 (C.D. Ill. 2012). *See also Patrick Collins, Inc. v. John Does 1-33*, 2012 WL 415424 (D. Colo. 2012) ("The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency."); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 at n. 6 (S.D.N.Y. 2012) ("[C]ourts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts.")

Plaintiff acknowledges that Doe Defendants may later assert different factual and legal defenses, "but that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)." *K-Beech Inc., v. John Does 1-57*, Case 2:11-cv-00358-CEH-SPC, at *12 (M.D. Fla. 2011). *See also Patrick Collins, Inc. v. John Does 1-15*, 2012 WL 415436 (D. Colo. Feb. 8, 2012) (same) (quoting *Call of the Wild Movie*, 770 F.Supp.2d at 343).

**V.**   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: January 11, 2013

Respectfully submitted,

NICOLETTI & ASSOCIATES, PLLC

By:      /s/ *Paul J. Nicoletti*                    
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2013 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ *Paul J. Nicoletti*